UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BROKER GENIUS INC.,

        *Plaintiff*,

v.

NRZ ENTERTAINMENT LLC,
NATHAN ZALTA,
MICHAEL SHAMAH,
JOSEPH BASSIL and
GONTHAM, LLC,

        *Defendants*.

Civil Action No. 1:17-cv-02099-SHS

**MEMORANDUM IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR RECONSIDERATION</u>**

PEARL COHEN ZEDEK LATZER BARATZ LLP
Daniel J. Melman (DM-8239)
Veronica Mullally Muñoz (MM-9985)
1500 Broadway, 12th Floor
New York, NY 10036
(646) 878-0800
VMunoz@PearlCohen.com
DMelman@pearlcohen.com

*Attorneys for Plaintiff*
*Broker Genius Inc.*

Dated: June 19, 17

**Table of Contents**

Page

I.  INTRODUCTION .................................................................................................................. 1

II.  FACTS .................................................................................................................................... 3

III.  LEGAL STANDARD ............................................................................................................. 7

IV.  ARGUMENT .......................................................................................................................... 8

    A.  Reconsideration of the Court's June 6, 2017 Order is Warranted ................. 8

    B.  Any Subsequent Subpoena to Mr. Lubin Will be Limited to QuickBooks Accounting Records, and Exclude Tax Returns ................................ 11

V.  CONCLUSION ..................................................................................................................... 12

**Table of Authorities**

Page(s)

Cases

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
　684 F.3d 36 (2d Cir. 2012), as amended (July 13, 2012) .................................................. 7

*Callari v. Blackman Plumbing Supply, Inc.*,
　988 F. Supp. 2d 261 (E.D.N.Y. 2013) ............................................................................... 8

*Gupta v. Attorney Gen. of United States*,
　52 F. Supp. 3d 677 (S.D.N.Y. 2014) .................................................................................. 8

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
　43 F. Supp. 3d 369 (S.D.N.Y. 2014) .................................................................................. 8

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
　729 F.3d 99 (2d Cir. 2013) ............................................................................................. 8, 9

*Orly Indus., Inc. v. Rite Aid Headquarters Corp.*, No. 12-CV-855,
　2014 U.S. Dist. LEXIS 79627, 2014 WL 2612064 (E.D.N.Y. June 11, 2014) ...... 6, 10, 11

*Pall Corp. v. 3M Purification Inc.*, No. 03-CV-92,
　2015 U.S. Dist. LEXIS 111293 (E.D.N.Y. Aug. 20, 2015) ............................................ 7, 9

*Shrader v. CSX Transp. Inc.*,
　70 F.3d 255 (2d Cir. 1995) ............................................................................................. 7, 9

*Solow v. Conseco, Inc.*, No. 06 Civ. 5988,
　2008 U.S. Dist. LEXIS 4277, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) ................. 7, 11

**Rules**

Fed. R. Civ. P. 60…………………………………………………………………………1, 7
S.D.N.Y. Loc. Civ. R. 6.3…………………………………………………………………1, 7

Plaintiff Broker Genius Inc. ("Broker Genius" or "Plaintiff") submits this memorandum in support of its motion, pursuant to Fed. R. Civ. P. 60(b) and Southern District Local Civil Rule 6.3, for reconsideration of this Court's June 6, 2017 order quashing the subpoena to Mr. Robert Lubin ("Lubin subpoena") (see D.I. 47). As explained below, Broker Genius expressly agrees to limit a subpoena served on Mr. Lubin to QuickBooks accounting records for each of defendants Nathan Zalta, Michael Shamah and NRZ Entertainment LLC, and to exclude tax returns and documents related to non-party Albert Zalta. Accordingly, reconsideration of the Court's June 6, 2017 Order is warranted.

## I. INTRODUCTION

Based on information obtained in discovery, including deposition testimony, Broker Genius has reason to believe that there is an undisclosed party of interest in this litigation. So far, defendants Nathan Zalta, Michael Shamah and NRZ Entertainment LLC ("NRZ") have refused to name any additional party. Broker Genius has reason to believe that this party is, in fact, Mr. Joseph Hedaya, who was one of three owners of NRZ when it was established. Defendant Zalta was evasive and could not provide a straight answer when asked about how and when Mr. Hedaya supposedly left NRZ. Defendant Zalta testified that NRZ made $100,000 profit in 2016 and his partner Defendant Shamah testified that NRZ made $150,0000 profit in 2016 on a turnover of $6 million. However, profit and loss records for NRZ in 2016 in Broker Genius' possession shows that NRZ suffered a $1.2 million loss in the last two months of 2016. In spite of this, Defendants maintain that NRZ is single-handedly financing this law suit.

Broker Genius has a right to know who all of the owners and interested parties related to NRZ are. In order to verify whether this is the case, and also to determine the extent of any such third-party financing the law suit and with an interest in NRZ, Broker Genius subpoenaed NRZ's financial records—including tax returns and supporting documents, as well as QuickBooks and/or

1

accounting records—from its accountant, Mr. Robert Lubin. No motions to quash or for protective orders were made.  But, when Broker Genius' counsel went to copy the records at Mr. Lubin's office, she was informed that Mr. Lubin had been instructed not to comply with the lawfully-issued subpoena. What followed was email correspondence between Broker Genius' and NRZ's counsel (who objected to the subpoena and instructed Mr. Lubin not to comply) and a hastily-arranged telephone conference with the Court. Because of the circumstances of the telephone conference (Broker Genius' counsel was at Mr. Lubin's office), Broker Genius could not present evidence of the relevance of the subpoenaed financial records. The next day, the Court quashed the subpoena for "tax returns and supporting documents." (D.I. 47).

Reconsideration of that Order is required. As set forth below, and as Broker Genius would have argued had time permitted during the June 5 telephone conference, the subpoenaed financial records are highly relevant to the question of determining the real parties in interest here and for damages in this case. NRZ is a small company with a $1.2 million loss. If there is an undisclosed third party behind NRZ, financing the lawsuit, identification of said third party (likely Mr. Hedaya affluent from the buyout of his last web venture and a so-called former owner of NRZ - former for reasons NRZ cannot or will not explain or produce any agreements related to Hedaya's ownership of the company) Broker Genius needs to know. The subpoenaed financial records will establish whether Mr. Hedaya or another third party is financing this lawsuit on NRZ's behalf and his ownership status of NRZ must be determined.  Defendants have refused to produce documents responsive to RFP 34 (attached as Ex. A), which requests "All communications with any actual or potential investors, funders, and capital providers concerning this Action and all documents concerning such communications."

In light of the above, the June 6 Order quashing Broker Genius' subpoena to Mr. Lubin should be reconsidered. Broker Genius will limit any further subpoena to Mr. Lubin to QuickBooks and/or accounting records for the named entities (defendants Nathan Zalta, Michael Shamah and NRZ), and will specifically exclude tax returns.

## II.  FACTS

### A.  Deposition of Nathan Zalta

Broker Genius took the deposition of Nathan Zalta on May 18 and 22, 2017. Mr. Zalta is a defendant in this action as well as owner and CEO of defendant NRZ Entertainment LLC ("NRZ"). Relevant here, Mr. Zalta testified (PX-80, Ex. B) as follows:

- When NRZ started, around the beginning of 2015, the persons involved were Nathan Zalta, Michael Shamah and Joseph Hedaya, whose role was "funding and guidance." Mr. Hedaya is supposedly no longer involved with NRZ. (PX-80, Ex. B, 38:3-16);

- Mr. Hedaya invested "roughly" $50,000 in NRZ (PX-80, Ex. B, 39:11-13);

- Nathan Zalta could not (or, would not) testify when Mr. Hedaya left NRZ, or the circumstances of his leaving. (PX-80, Ex. B, 39:14-22);

- When Mr. Hedaya left NRZ, he asked for his money back. Mr. Hedaya and NRZ "came to an agreement." (PX-80, Ex. B, 40:11-16);

- Mr. Hedaya received more back than just his $50,000. (PX-80, Ex. B, 42:16-21);

- Mr. Hedaya, who supposedly left NRZ around the beginning of 2016, was its only investor. (PX-80, Ex. B, 43: 8-14);

- Mr. Hedaya had a written agreement with NRZ, the basis of which was that he owned one-third of NRZ. (PX-80, Ex. B, 56:10-21);

- Broker Genius ran a profit and loss statement for NRZ's business over 2016 and the report showed NRZ lost $1.2 million - surprisingly all in the last two months of the year. PX-32, Ex. D.

- NRZ's accountant [Mr. Lubin] "handles the book work on, you know, those matters [i.e., payment of employee salaries]." (PX-80, Ex. B, 46:3-10);

- Mr. Lubin "handles all of [Zalta's and NRZ's] financials," including annual filings with the New York Department of State." (PX-80, Ex. B, 51:5-9).

- A new profit and loss statement supposedly corrected NRZ's financials - Zalta did not know when the corrections were reported. (PX-80, Ex. B, 198: 7-16).

- The corrected financial figures for 2016 supposedly do not reflect a loss of $1.126 million. (PX-80, Ex. B, 197:16-198:6);

- Zalta testified the reason for the loss was NRZ's overpricing inventory when switching from one POS to another. But, in fact only some tickets in NRZ's inventory were repriced for the change over to a new POS. *See* PX-50, Ex. G.

B.  **Subpoena to Robert Lubin**

In light of Nathan Zalta's testimony, especially as it related to unproduced, "corrected" financial statements, as well as the agreements between NRZ and Mr. Joseph Hedaya, on May 26, 2017, counsel for Broker Genius served a subpoena to produce documents, information, or objects or to permit inspection of premises on Robert. Lubin ("the Lubin subpoena, attached as Ex. C). By the subpoena, Broker Genius sought production of twelve (12) categories of documents, viz:

1. All documents related to Nathan Zalta, including tax returns, for 2016.
2. All bookkeeping entries hard copy and digital for 2016 related to Nathan Zalta.
3. All quickbooks or any other bookkeeping files for 2016 related to Nathan Zalta.

4. All documents related to Michael Shamah[1], including tax returns, for 2016.

5. All bookkeeping entries hard copy and digital for 2016 related to Michael Shamah.

6. All quickbooks or any other bookkeeping files for 2016 related to Michael Shamah.

7. All documents related to Albert Zalta[2], including tax returns, for 2016.

8. All bookkeeping entries hard copy and digital for 2016 related to Albert Zalta.

9. All quickbooks or any other bookkeeping files for 2016 related to Albert Zalta.

10. All documents related to NRZ Entertainment, LLC, including tax returns, for 2016.

11. All bookkeeping entries hard copy and digital for 2016 related to NRZ Entertainment, LLC.

12. All quickbooks or any other bookkeeping files for 2016 related to NRZ Entertainment, LLC.

(Lubin subpoena, Ex. C, at p.9).

### C. Objections to the Lubin Subpoena

Undersigned counsel made arrangements for an attorney from its office to visit Mr. Lubin's office on June 5, 2017, to inspect and copy documents responsive to the subpoena. However, when she went there no documents were provided for inspection and copying. Instead, undersigned counsel learned that counsel for the NRZ Defendants[3] had instructed Mr. Lubin to refuse to comply with the subpoena. Ex. E. Undersigned counsel immediately wrote to counsel for the NRZ Defendants, advising that the refusal to comply with a lawfully issued subpoena was improper and constituted contempt of court. Neither the NRZ Defendants nor Mr. Lubin moved for a protective order or to quash the subpoena. Undersigned counsel advised that failure to provide written

---

[1] Michael Shamah is a defendant in this action.

[2] Albert Zalta is the younger brother of Nathan Zalta. He also works at NRZ. It was Albert Zalta who supplied the name of the accountant, Robert Lubin, at his deposition.

[3] "NRZ Defendants" include Nathan Zalta, Michael Shamah and NRZ.

5

confirmation of compliance by Mr. Lubin would result in Broker Genius seeking relief from the Court by order for contempt. *Id.*

    Counsel for the NRZ Defendants responded, also on June 5:

> Our clients and Mr. Lubin have legally valid grounds to the object to the subpoena under Rule 45 on the basis that it failed to allow reasonable time to comply, requires disclosure of privileged or other protected matter, and/or subjects him to an undue burden. The subpoena was served on May 26 and gave him less than a week to comply or respond.
>
> Further, Defendants [*sic*] are not entitled to the documents sought in the subpoena, particularly at this stage of the case. Personal financial information is presumptively confidential and discovery of tax returns is only allowed upon demonstration of a compelling need. Broker Genius has not and cannot demonstrate a compelling need. Our letter motion to the court will be filed by tomorrow.

*Id*.

### D.    Conference with Court; Order

No letter motion was filed. Instead, the parties held a telephone conference with the Court on June 5, 2017. (See Order, D.I. 47). Although the parties were able to make argument during the conference, there was no opportunity to present or discuss evidence supporting or opposing compliance with the subpoena. In particular, and importantly, there was no opportunity for Broker Genius to present/discuss the above evidence concerning Nathan Zalta's deposition testimony.

    The Court issued its Order on June 6, 2017:

> A telephone conference having been held on June 5, 2017, with counsel for all parties present, it is HEREBY ORDERED that the Court construes defendants' objection to plaintiff's subpoena of a third-party accountant to obtain ***defendants' 2016 tax returns and supporting documentation*** as a motion to quash the third-party subpoena, and the Court grants defendants' motion to quash the subpoena for the reasons set forth during the telephone conference. See also *Orly Indus., Inc. v. Rite Aid Headquarters Corp.*, No. 12-CV-855, 2014 WL 2612064, at *2 (E.D.N.Y. June 11, 2014) (party has standing to challenge third-party subpoena for tax returns because it has "a sufficient privacy interest in the confidentiality of

6

> [those] records"); *Solow v. Conseco, Inc.*, No. 06 Civ. 5988, 2008 WL 190340, at *3-*5 (S.D.N.Y. Jan. 18, 2008) (stating that courts may "quash ... a subpoena to protect the person subject to or affected by the subpoena from unnecessary or unduly harmful disclosures of confidential information" and quashing a subpoena after "weighing the relevance or probative value of the documents being sought against the privacy interests ... asserted").

(D.I. 47; emphasis added).

Broker Genius seeks reconsideration of the Court's June 6, 2017 Order in light of the above evidence, which was not able to be presented at the June 5 telephone conference. Broker Genius will expressly limit any subsequent subpoena to Mr. Lubin to QuickBooks accounting records for each of defendants Nathan Zalta, Michael Shamah, and NRZ. Broker Genius will specifically exclude tax returns and supporting documents for Albert Zalta from the subpoena.

### III. LEGAL STANDARD

Fed. R. Civ. P. 60(b)(6) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … any other reason that justifies relief."

A motion for reconsideration "is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling or order." *Pall Corp. v. 3M Purification Inc.*, No. 03-CV-92, 2015 U.S. Dist. LEXIS 111293 at *4-5 (E.D.N.Y. Aug. 20, 2015) (citing Local Civil Rule 6.3). "The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); accord *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), as amended (July 13, 2012). In determining a motion for reconsideration, the court should consider: (1) whether there has been "an intervening change of controlling law;" (2) whether there is new

evidence presented that was not previously available on the original motion; and (3) whether there is a "need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation, quotation omitted). "A party seeking reconsideration may . . . no[t] advance new facts, issues or arguments not previously presented to the Court." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) (citation, quotations omitted)). It is within the sound discretion of the district court whether or not to grant a motion for reconsideration. See *Gupta v. Attorney Gen. of United States*, 52 F. Supp. 3d 677, 679-80 (S.D.N.Y. 2014); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 287 (E.D.N.Y. 2013).

### IV. ARGUMENT

#### A. Reconsideration of the Court's June 6, 2017 Order is Warranted

Broker Genius, through its subpoena to NRZ's accountant, Robert Lubin, sought financial records for defendants Nathan Zalta, Michael Shamah and NRZ, as well as corresponding records for NRZ employee Albert Zalta. (Lubin subpoena, Ex. C, p. 9). Such documents are highly relevant to the determination of damages in this case, including (without limitation):

- The existence of a "corrected" financial report, testified to by Nathan Zalta, purportedly reflecting a different annual loss than shown in the documents provided to Broker Genius; and

- The continuing role, if any, of Joseph Hedaya in NRZ, including whether Mr. Hedaya is financing the instant lawsuit for NRZ and/or is providing additional financing for NRZ.

This latter point is especially important, as NRZ has claimed to be a small company with annual losses in excess of $1 million. Yet, it is able to participate fully in a federal lawsuit, including having at least six attorneys of record. Broker Genius' fees with only 4 lawyers involved amount

to well over $500,000 to date.  Someone is paying for all of this legal representation; if it is Mr. Hedaya, Broker Genius is entitled to know this and also to know what ownership he has in NRZ. Broker Genius also is entitled to know about "corrections" to NRZ's financials.  That both impact not only the credibility, or lack thereof of NRZ, well as damages.

Equally apparent, the factual evidence supporting reconsideration—Nathan Zalta's deposition testimony, discussed above—could not have been brought to the Court's attention during the June 5, 2017 telephone conference. There was just no time. As a result, Mr. Zalta's deposition testimony comprises "matters [the Court] may have overlooked in its initial ruling or order." *Pall Corp.* 2015 U.S. Dist. LEXIS 111293 at \*4. Alternatively, Mr. Zalta's testimony is "new evidence [] that was not previously available on the original motion." *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104. Either way, Mr. Zalta's testimony "might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

In addition, the substantial evidence of Defendants' unclean hands in this matter further supports reconsideration.  As noted, Broker Genius has reason to believe that there may be a third NRZ party-in-interest who has not been disclosed by Defendants.  Defendants Nathan Zalta and Michael Shamah both testified that an individual, Joseph Hedaya (Shamah's cousin) was involved when NRZ was started, and while they now claim that Mr. Hedaya is no longer involved in NRZ, Zalta obfuscated and would not give a straight answer when asked about his leaving NRZ. PX-80, Ex. B, 39:16-22. Zalta testified that NRZ made only around $100,000 profit on its $6 million revenue turnover in 2016 and Shamah testified the profits were between $150,000-200,000. PX-80, Ex. B, 107:20-23; PX-81, Ex. F, 25:17-26:12. Shamah also testified that NRZ uses many credit cards to buy its inventory, including the credit cards of people outside the company who are compensated by collecting the miles awarded – millions of commercially valuable miles must have

9

been awarded to Shamah and Zalta and their friends on a turnover revenue of $6 million. PX-81, Ex. F, 19:2-16. When asked who is paying the lawyers' fees for the defense of this suit, both Shamah and Zalta testified that NRZ is paying – this is completely implausible given that a profit and loss statement for NRZ for 2016 shows that NRZ lost $1.2 million in 2016 surprisingly all at the very end of the year. PX-32, Ex. D. Questioned about the report, Zalta said that NRZ switched its POS in the beginning of November and had to overprice its inventory to do the POS changeover but that everything was corrected afterwards. PX-80, Ex. B, 195:19-197:4. Two things make this explanation incredible: 1. out of all of its inventory, only tickets for some events ,for example a Chicago Bulls event taking place on December 31, 2016, were repriced as inventory costing $1499 per ticket **or as in the case of one group of twelve tickets each priced at $99,999** (each ticket later resold for between $35 and $123) – the rest of NRZ's inventory transferred to the new POS was not repriced (PX-50, Ex. G, at 52); 2. the profit and loss report remains the same because the inventory was not repriced despite the change from one POS to another taking place two months before the end of 2016. PX-32, Ex. D. Despite his assertions that the inventory pricing was corrected, Zalta could not say when it was corrected – just that his accountant would know. PX-80, Ex. B, 191:9-192:8. If those losses were real, company with such losses is unlikely to be able to pay the lawyers' fees involved in defending this action – even a company making $100,000 and buying inventory with other people's credit cards could not. Mr. Hedaya on the other hand recently benefited from a buy-out of his interest in a web-based business, Unroll.me.

Cases cited in the June 6 Order are distinguishable. In *Orly Indus., Inc. v. Rite Aid Headquarters Corp.*, No. 12-CV-855, 2014 U.S. Dist. LEXIS 79627, at *7-8 (E.D.N.Y. June 11, 2014), Rite Aid argued on reconsideration that it was entitled to "information regarding the financial relationships among Orly, Orly Plastics and Mr. Torkieh [which] will provide additional

evidence to support its claims that Orly should be responsible for the conduct of Orly Plastics and, potentially, that Mr. Torkieh may also be liable for the conduct of both companies." The court disagreed, saying (emphasis added):

> In light of the Court's prior ruling, the "conduct of Orly Plastics" involves transactions that are governed by the Master Agreement's venue provision ***and are not properly before this Court***. Moreover, ***Torkieh is not named as a party here***. Accordingly, ***Judge Azrack's conclusion that the requested information is irrelevant to this action was not clearly erroneous or contrary to law***, and was within her discretion.

In *Solow v. Conseco, Inc.*, No. 06 Civ. 5988, 2008 U.S. Dist. LEXIS 4277 (S.D.N.Y. Jan. 18, 2008), the court granted the motion to quash because the sought-for financial records (at *14) (emphasis added):

> ***have little or no relevance to the claims and defenses in this action***, while having potential value to [plaintiff] in his contemporary competitive relationship with Macklowe, a non-party to this litigation. Weighing this against Macklowe's legitimate interest in maintaining the confidentiality of proprietary documents bearing on his assets and financial plans, the Court concludes that the motion to quash the subpoena should be granted.

Here, as shown, the subpoenaed financial records have significant relevance to the issue of damages, including the potential existence of a deep-pocket real party in interest in Mr. Hedaya.

### B. Any Subsequent Subpoena to Mr. Lubin Will be Limited to QuickBooks Accounting Records, and Exclude Tax Returns

Further, in compliance with the plain terms of the Court's June 6, 2017 Order, and to avoid disclosure of highly confidential personal financial information, Broker Genius agrees to limit any further subpoena to Mr. Lubin to QuickBooks accounting records for defendants Nathan Zalta, Michael Shamah and NRZ, and will exclude documents related to NRZ employee (and Nathan Zalta's brother) Albert Zalta. That is, the subpoena will exclude all "tax returns." As such, Broker Genius' legitimate discovery needs may be satisfied without prejudicing any party or non-party.

## V. CONCLUSION

For the foregoing reasons, Broker Genius respectfully requests that the Court reconsider its June 6, 2017 Order, and permit Broker Genius to serve a subpoena on NRZ's accountant, Mr. Robert Lubin, limited to QuickBooks accounting records for each of Nathan Zalta, Michael Shamah, NRZ Entertainment LLC and Albert Zalta.

PEARL COHEN ZEDEK LATZER BARATZ LLP

By: /s/ Daniel Melman
Daniel J. Melman (DM-8239)
Veronica Mullally Muñoz (MM-9985)
1500 Broadway, 12th Floor
New York, NY 10036
(646) 878-0800
VMunoz@PearlCohen.com
DMelman@pearlcohen.com
*Attorneys for Plaintiff Broker Genius INC.*

Dated: June 19, 17

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2017 a copy of PLAINTIFF BROKER GENIUS, INC.'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION was served upon all parties and counsel of record via ECF.

Date: June 19, 2017                           /s/ Daniel Melman
                                              Daniel J. Melman

1