# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BROKER GENIUS, INC.,

       Plaintiff,

v.

NATHAN ZALTA,
MICHAEL SHAMAH,
NRZ ENTERTAINMENT LLC,
JOSEPH BASSIL and
GONTHAM, LLC,

       Defendants.

Civil Action No. 17-CV-2099-SHS

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SANCTIONS PURSUANT TO RULES 26 AND 37**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................3

FACTS .........................................................................................................................................4

APPLICABLE LEGAL STANDARDS ......................................................................................6

ARGUMENT ..............................................................................................................................7

I.      BOTH COUNSEL AND DEFENDANTS HAVE MADE GOOD FAITH
EFFORTS TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS. ......................7

        A.     DEFENDANTS' COUNSEL ACTIVELY PARTICIPATED IN AND OVERSAW
DEFENDANTS' DOCUMENT PRODUCTION EFFORTS. ..................................................7

        B.     ZALTA DID NOT COMMIT PERJURY IN HIS DEPOSITION. .........................................9

        C.     ZALTA DID NOT COMMIT PERJURY IN HIS INTERROGATORY RESPONSES.............11

        D.     DEFENDANTS HAVE NOT WITHHELD ANY RESPONSIVE DOCUMENTS. ..................13

II.     SANCTIONS UNDER RULE 37 ARE NOT WARRANTED. ........................................15

        A.     BROKER GENIUS WAS NOT PREJUDICED BY THE LATE PRODUCTION OF
DOCUMENTS OR ALLEGED PERJURIOUS TESTIMONY. ...............................................15

        B.     ANY NON-COMPLIANCE IS SUBSTANTIALLY JUSTIFIED. ........................................16

        C.     THE SANCTIONS REQUESTED BY BROKER GENIUS ARE EXTREME AND NOT
WARRANTED BY THE ALLEGED HARM SUFFERED. ..................................................16

        D.     NEITHER COUNSEL FOR DEFENDANTS NOR DEFENDANTS VIOLATED ANY
COURT ORDER. ......................................................................................................18

III.    SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY ARE NOT
WARRANTED. ..........................................................................................................19

CONCLUSION...........................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Bonds v. D.C.*, 93 F.3d 801, 809 (D.C. Cir. 1996) ......................................................... 17

*Clark v. Westchester Cty.*, No. 96 CIV. 8381 (DLC), 1998 WL 709834, at *9 (S.D.N.Y. Oct. 9, 1998) ........................................................................................................ 7, 15

*Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007) ........................... 12

*Kiobel v. Royal Dutch Petroleum Co.*, No. 02–CV–7618, 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009) .................................................................................... 7

*Mattice v. Conveo Corp.*, 3:10-CV-2009 JCH, 2012 WL 10544, at *2 (D. Conn. Jan. 3, 2012) ......................................................................................................................... 11

*Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543 (N.D. Cal. 1987) ...................... 9

*Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988) .................................... 16

*Phinney v. Paulshock*, 181 F.R.D. 185, 203 (D.N.H. 1998), *aff'd sub nom. Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir. 1999) ...................................... 8

*Quinby v. WestLB AG*, 04CIV.7406(WHP)(HBP), 2005 WL 3453908, at *4 (S.D.N.Y. Dec. 15, 2005) ................................................................................................ 7

## Statutes

17 U.S.C. § 106 ............................................................................................................... 16

## Other Authorities

Notes of Advisory Committee on Rules—1983 Amendment. ....................................... 6

## Rules

Fed. R. Civ. P. 26(g)(1)(B) ............................................................................................ 6

Local Civil Rule 37.2 ...................................................................................................... 7

## INTRODUCTION

Yet again Plaintiff has cobbled together half-truths and twisted facts to claim that Defendants, and their counsel, should be sanctioned.[1] Plaintiff claims that Defendants' counsel failed to adequately supervise and conduct discovery and that Defendants withheld evidence and committed perjury. As set forth below, Plaintiff is wrong. Defendants' counsel complied with their discovery obligations by, among other things: (a) sending Defendants correspondence instructing them to preserve evidence the day of the T.R.O. hearing; (b) forwarding Plaintiff's discovery requests to Defendants the same day they were served; (c) personally reviewing every relevant email account using the search terms that Plaintiff provided, collecting relevant documents, and producing them after Plaintiff raised its discovery deficiency concerns; and (d) voluntarily conducting a similar search and supplementing Defendants' document production in October and November when it became clear that such supplementation was necessary. From the start of this case, each time Plaintiff has raised a discovery dispute Defense counsel has addressed it in good faith by bringing it to Defendants' attention and taking remedial measures when needed. Defendants did not withhold evidence and there is no evidence that any Defendant willfully testified falsely.

In filing the instant Motion, Plaintiff is attempting to short-circuit having to actually prove its claims against Defendants at trial. Specifically, Plaintiff seeks an instruction establishing certain facts as true and barring Defendants from being able to contest those facts. If entered, these findings would effectively mandate judgment in Plaintiff's favor on its copyright infringement and breach of contract claims. Plaintiff cites no case law in support of its request and makes no effort

---

[1] In July, after the evidentiary hearing, Plaintiff filed a baseless letter motion asking the Court to sanction Defendants for purportedly falsifying evidence. Dkts. 89, 90, 92, 93, 94, 112. Plaintiff's motion had no merit whatsoever and was denied.

to tie the purported wrongdoing to its requested relief. For the foregoing reasons, as explained in detail below, Defendants and Defendants' counsel hereby respectfully request this Court deny the subject Motion.

## FACTS

On March 23, 2018, immediately after the hearing on Plaintiff's motion for a T.R.O., Defendants' counsel emailed Defendants instructing them to preserve relevant evidence. *See* Exhibit A. The email quoted the Court's T.R.O. order. *Id.* That same day, the Court entered an extremely condensed scheduling order with: document demands and interrogatories due seven (7) days later, responses to discovery requests only 2 weeks later, and the completion of fact and expert witness depositions within 2 months. Dkt. 6. By any measure this was an extraordinarily short amount of time to complete discovery on very complicated claims—as Your Honor has recognized at various times throughout the proceedings. *See e.g.* Exhibit B, Tr. of Hr'g on 5.11.2017 at 4:6-10 ("things are, of necessity, moving quite rapidly here because I have set the factual hearing down on the preliminary injunction for the [*sic*] early June . . . so I understand things have been moving quickly.")  When the scheduling order was entered, Defendants' counsel immediately began planning and preparing for discovery.[2] After receiving Plaintiff's discovery demands on March 30, counsel *immediately* forwarded the demands to Defendants Shamah and Zalta. *See* Exhibit C. Thereafter, Defendants' counsel was in regular contact with Defendants regarding their efforts to answer the interrogatories and search for and produce relevant documents.[3] On April 25, 2017, Defendants produced over 3,000 pages consisting of responsive emails, screenshots of forum

---

[2] Counsel has not attached hereto every communication with its clients about discovery and Defendants' counsels' oversight of same but would be glad to provide these privileged communications to the Court for an in-camera review.

[3] *Id.*

conversations, chat logs, text messages, PDF files, including the 9-page Pricing Tools Directions PDF, and other electronic files. *See* Exhibit D.

After various discovery disputes between the parties, Plaintiff filed a letter motion regarding certain perceived discovery deficiencies in May. Dkt. 37. Counsel for Defendants immediately forwarded a copy of the letter to Defendants and requested confirmation that *all* documents and electronically stored information regarding Broker Genius and TickPricer had been produced. *See* Exhibit E. In an effort to ensure completeness, Defendants' counsel personally searched each of Defendants' email accounts for documents responsive to Plaintiff's requests for production. *See* Exhibit F. Defendants' supplemented their document production on May 12, 2017 with over 11,000 additional pages of responsive material, including email messages, Excel spreadsheets, and computer screenshots. *See* Exhibit G. Both parties continued to supplement their document production up to and through the preliminary injunction hearing, and have continued to do so since.

Following the evidentiary hearing, discovery (and the litigation generally), were mostly quiet—aside from Plaintiff's letter motion claiming that Defendants fabricated evidence, which the Court denied. Dkts. 89, 90, 92, 93, 94, 112. On September 29, 2017, Plaintiff served its third set of requests for production, which counsel again forwarded to Defendants within minutes. *See* Exhibit H. On October 17, 2017, Plaintiff filed a motion for judgment on the pleadings concerning Defendants' counterclaim. *See* Dkt. 131. In response to the motion, Defendants' counsel reviewed the relevant pleadings and both parties' document production and pushed Defendants for any additional documents not previously produced. *See* Exhibit I. That same day, Defendants also sent Plaintiff a discovery letter requesting their supplemental document production. *See* Exhibit J. On October 23, 2017, Defendants' counsel again sought passwords to Defendants' email accounts so

that it could review and collect documents responsive to Plaintiff's third requests for production and supplemental production generally. *See* Exhibit K. On October 26, 2017, Plaintiff served its Second Set of Interrogatories to Defendants, which counsel again forwarded to Defendants within minutes. *See* Exhibit L.

Defendants subsequently supplemented their production on October 31, November 15, and November 20. Included in these supplemental productions were the text messages and voice mail messages exchanged between Mr. Harary and Mr. Zalta.

## APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 26(g)(1)(B) requires signature certification that to the best of the person's knowledge, information and belief formed after a reasonable inquiry that any request, response or objection is: (i) consistent with the Rules and warranted by existing law or nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose; and (iii) neither unreasonable nor unduly burdensome or expensive. *Id.* "Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request. Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand." Notes of Advisory Committee on Rules—1983 Amendment.

By signing a response to a discovery request, an attorney certifies that to the best of her 'knowledge, information, and belief formed after a reasonable inquiry,' the response is (1) consistent with the Federal Rules of Civil Procedure and justified under existing law; (2) not interposed for any improper purpose, such as to unnecessarily delay or needlessly increase the costs of litigation; and (3) reasonable given the importance of the issue and the circumstances of the case. *Kiobel v. Royal Dutch Petroleum Co*., No. 02–CV–7618, 2009 WL 1810104, at *2

(S.D.N.Y. June 25, 2009). "An attorney has made a "reasonable inquiry" under Rule 26(g) if the 'investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances . . . Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.'" *Quinby v. WestLB AG*, 04CIV.7406(WHP)(HBP), 2005 WL 3453908, at *4 (S.D.N.Y. Dec. 15, 2005) (*quoting* Fed.R.Civ.P. 26(g) Advisory Committee Notes to 1983 Amendments.) In making a reasonable inquiry, an attorney may rely, when appropriate, on representations by her client or by other attorneys. *Kiobel*, 2009 WL 1810104, at *2. Even where a violation occurs, sanctions under either Rule 26(g) or Rule 37(c) are not appropriate where there is a substantial justification for the failure to comply or where the non-compliance was harmless. *Clark v. Westchester Cty.*, No. 96 CIV. 8381 (DLC), 1998 WL 709834, at *9 (S.D.N.Y. Oct. 9, 1998).

## ARGUMENT

### I.  BOTH COUNSEL AND DEFENDANTS HAVE MADE GOOD FAITH EFFORTS TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS.

#### A.  DEFENDANTS' COUNSEL ACTIVELY PARTICIPATED IN AND OVERSAW DEFENDANTS' DOCUMENT PRODUCTION EFFORTS.

Plaintiff first argues "Counsel's participation in and supervision of discovery in this case was in no way 'consistent with the spirit and purposes of Rules 26 through 37' and mandatory sanctions under Rule 26(g) must be imposed." Motion at 12.[4] The basis for Plaintiff's assertion is that "counsel did not interview employees, or even send Plaintiff's request for production to

---

[4] Plaintiff filed this motion without first requesting an informal conference with the Court as required by Local Civil Rule 37.2, which states, "[n]o motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the Court by letter-motion for a pre-motion discovery conference . . . and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference." Plaintiff's Motion is based on Rules 26 and 37. As such, under the plain language of the Local Rules, the instant Motion should not be heard.

Defendants, nor did Counsel send terms for Defendants to search for ESI but rather allowed Defendants to come up with their own terms and to cherry pick which documents to produce." *Id.* This is simply false.

First, counsel sent all written discovery requests to Defendants immediately upon receipt, including document demands. Next, Defendants' counsel instructed Defendants to produce the broadest possible universe of documents—*all* documents regarding TickPricer or Broker Genius. *See e.g.* Exhibit E. Finally, to ensure that all responsive email messages were produced, Defendants' counsel personally searched and gathered these materials directly from each email account. Until Plaintiff identified specific issues, Defendants' counsel had no reason to question the completeness of Defendants' production; just as Plaintiff had no reason to second guess the completeness of its document production until Defendants identified specific discovery deficiencies. *See e.g.* Exhibit M. At the outset of discovery the parties did not exchange search terms that would govern document production. Undersigned is aware of no rule requiring a party's attorney to unilaterally come up with search terms to send to its client in collecting documents. Similarly, no rule requires interviewing employees. Plaintiff provides no authority to the contrary.

In support of its argument, Plaintiff cites the New Hampshire case *Phinney v. Paulshock*, 181 F.R.D. 185, 203 (D.N.H. 1998), *aff'd sub nom. Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1 (1st Cir. 1999). Plaintiff's reliance on *Phinney* is misplaced. In *Phinney* the court expressly found that counsel *did* make reasonable efforts to ensure that its client complied with the discovery requests. *Id.* at 204. However, counsel was sanctioned because he certified that late produced documents were found only after the client conducted a "significant search" for the missing records. In fact, the client stumbled upon the late-produced records by accident. The attorney could not have known whether his clients had made a "significant" search but nevertheless led plaintiff

to believe every effort had been made to comply with their requests. *Id.* The undersigned counsel made no such false or fraudulent certifications concerning Defendants' search for supplemental document production in this case.

Plaintiff's reliance on *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543 (N.D. Cal. 1987) is similarly misplaced. In *Turnage*, numerous responsive documents were destroyed during the litigation with counsel's knowledge; counsel withheld the existence of two entire computer systems until very late in the litigation and knowingly misrepresented the capabilities of the computer systems; counsel failed to investigate when it learned its clients had destroyed responsive documents; and counsel actively attempted to stifle its client's compliance with discovery and cooperation with the court's inquiry into the alleged violations. No such facts exist here. Rather, the undersigned worked diligently within the limited time permitted to ensure that Defendants were aware of and fully complied with their discovery obligations, personally searched for and produced responsive email messages, and supplemented in a timely manner as soon as they became aware of any additional materials.

Finally, this Court has already addressed Plaintiff's claim of wrongdoing by Defendants' counsel during Mr. Zalta's deposition. *See* Exhibit N. During a telephonic hearing June 12, Mr. Cooper fully addressed the issue with the Court by explaining the facts and circumstances of the purported "coaching" and apologizing for the misunderstanding. *Id.* The Court accepted counsel's representations and subsequently reviewed the transcript of Mr. Zalta's deposition. *Id.* Plaintiff's rehashing the same issue already addressed serves no purpose aside from evidencing a bad faith effort to smear Defendants' counsel.

### B.  ZALTA DID NOT COMMIT PERJURY IN HIS DEPOSITION.

Plaintiff claims that Zalta committed perjury because "at his deposition Zalta on May 18, 2017, testified under oath when asked if Harary was a Broker Genius client that '[he] did not

know.'" Motion at 10. Plaintiff claims this was perjury because of the emails exchanged between Zalta and Harary in January through March.  Plaintiff's claim fails for two reasons: first, Plaintiff mischaracterizes Zalta's testimony. Second, there is no evidence of willful intent to testify falsely.

First, Plaintiff mischaracterizes Defendant's testimony. Defendant Zalta was not asked "if Harary was a Broker Genius client." He was asked: "But he [Harary] was using Broker Genius's product Auto Pricer in February 23, 2017?" Zalta answered, "I can't comment on what Abe Harary was doing with his business." He was then asked: "Okay. So are you telling me you didn't know very much about Abe Harary that - - you didn't have enough information about him to know what pricing tool he was using?" Zalta answered: "I did not know the extent of his use of pricing tools or his business operations." *Id.* Plaintiff's counsel's questions asked about Harary's *use* of Broker Genius's product; not about whether he knew if Harary was a Broker Genius client.

Second, even if Plaintiff's characterization of Zalta's testimony is accurate, there is no evidence that Zalta willfully intended to provide false testimony. Perjury is "'(a) the intentional (b) giving of false testimony (c) as to a material matter.' Perjury is committed 'willfully' where it is made 'with the specific purpose of obstructing justice', and 'materially' where it is material to the proceeding in which it is given." *United States v. Ben-Shimon*, 249 F.3d 98, 102 (2d Cir. 2001) (remanding case to district court for fact finding and re-sentencing where sentence enhancement was made for obstruction of justice based on perjury without finding regarding willfulness and materiality.)

Rather than perjury, any inconsistency between Zalta's testimony and the documents merely presents a factual issue to be tried by the jury.  "Inconsistency between a party's deposition testimony and documents obtained in discovery is hardly evidence of perjury. Instead, it is evidence of a factual issue, to be resolved by a jury at trial." *Mattice v. Conveo Corp.*, 3:10-CV-

2009 JCH, 2012 WL 10544, at *2 (D. Conn. Jan. 3, 2012) (denying motion for sanctions). "While [plaintiff] may use documents . . . to impeach [Defendant's] testimony at trial, it may not simply assert that the existence of such [evidence] conclusively proves that [Defendant] is willfully testifying falsely. Contradictory evidence does not constitute clear and convincing evidence of perjury." *Id.* "It is for the jury to determine the credibility of [Defendant's] testimony as compared to the documents[.]" *Id.* at 3.

### C.   ZALTA DID NOT COMMIT PERJURY IN HIS INTERROGATORY RESPONSES.

Plaintiff also claims Zalta committed perjury in Defendants' responses to Plaintiff's second set of interrogatories in stating: "The Tickpricer software code was developed independently of Plaintiff's software." Motion at 9. Again, Plaintiff does not allege and cannot prove that Defendant Zalta had the willful intent to testify falsely.  Regardless, Plaintiff's argument extracts the single sentence from the context of the interrogatory and the full answer and misrepresents its import. The sentence was included in Defendants' answer to Interrogatory No. 17, which is reproduced below along with the complete answer:

> **INTERROGATORY NO. 17:**   Set forth all facts, bases, and contentions supporting or relating to Defendants' Tenth Affirmative Defense – "Competition."

> **RESPONSE:** Defendants object to the interrogatory as overly broad and unduly burdensome to the extent it seeks all facts, bases, and contentions supporting or relating to Defendants' tenth affirmative defense. Defendants are not required to identify every fact, basis, and contention supporting or relating to Defendants' tenth affirmative defense in response to Plaintiff's contention interrogatories. Defendants are only required "to explain the factual bases for their contentions by providing the material facts upon which they will rely, but not [provide] a detailed and exhaustive listing of all of the evidence that will be offered." *Linde v. Arab Bank, PLC*, CV-04-2799 NG VVP, 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012) (citing cases). Subject to and without waiving the foregoing objection, Defendants' tenth affirmative defense is based upon the fact that by creating and offering TickPricer, Defendants merely offered an individually developed competitive product at a competitive price and on terms that numerous ticket brokers found to be more appealing than Plaintiff's. Defendants did not tortiously interfere with Plaintiff's existing or prospective business relationships. Significantly, there is no proof that they acted for a wrongful purpose or used dishonest, unfair, or improper

means. Defendants' TickPricer software does not make use of any alleged trade secret belonging to Broker Genius because, among other reasons, the purported trade secrets at issue are not, in fact, trade secrets, as set forth in Defendants' Post-Hearing Brief. **Further, Defendants did not infringe any of Plaintiff's software code or otherwise infringe any copyright purportedly owned by Plaintiff. The TickPricer software code was developed independently of Plaintiff's software. TickPricer's developer never had access to any of Plaintiff's code. Thus, Defendants are not liable for the conduct alleged.**

(Emphasis added.)

The subject statement is made in the context of responding to Plaintiff's copyright infringement claim. Plaintiff's copyright claim specifically refers to copied software code. *See* Dkt. 25 at par. 86 ("Defendants unlawfully reproduced and copied . . . copyrighted Auto Pricer v.3 software code . . ."); 101 ("Defendants . . . in express violation of the limitations on the access to which Defendants had any right of access, have reproduced and copied . . . copyrighted technology. In particular, Defendants have copied and made unauthorized use of Broker Genius' copyrighted Auto Pricer v.3 software code . . .").

To prevail on its copyright infringement claim Plaintiff must prove access and substantial similarity. *See e.g. Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 537 (S.D.N.Y. 2007) ("copying is proven by showing (a) that the defendant had access to the copyrighted work and (b) the substantial similarity of protectable material in the two works.") As the Court itself has acknowledged, "there is no evidence that NRZ accessed Broker Genius's source code[.]" Dkt. 150 at 11. This is what is conveyed by Defendants' response stating that the TickPricer software code was developed independently of Plaintiff's software.

Further, the response is consistent with the record evidence. Bassil never logged into AutoPricer v.3 while developing TickPricer. "[T]here is no direct evidence in this record that Zalta ever shared his screen with Bassil or ever enabled Bassil to log into the AutoPricer v.3 software." Dkt. 150 at 24. Zalta sent Bassil a static screenshot of the AutoPricer user interface. This is not the

same as accessing the actual software, just as having a picture of a car is not the same as having

access to the car itself. Similarly, conversations about features of Plaintiff's software are not the

same as having access to the software. Mr. Zalta's interrogatory response is not perjurious – it is

true and consistent with the record evidence.

### D.  DEFENDANTS HAVE NOT WITHHELD ANY RESPONSIVE DOCUMENTS.

As described in the Facts section above, no documents were withheld from production.

After Plaintiff's 12(c) motion was filed Defendants realized supplementation was necessary and

supplemented their production. Specifically, paragraph 15 of Defendants' counterclaim states:

"[a]t least one acquaintance of NRZ's received a text message from an officer of Broker Genius

stating that NRZ 'ripped off our technology.'" Dkt. 41 at 18. This allegation is based upon

information received from Defendant Zalta regarding a previous conversation with Mr. Harary.

Harary sent Zalta the text of a text message conversation he had with Mr. Ellman about Plaintiff's

March 28 email blast concerning this lawsuit. Zalta sent counsel the language of the Ellman-Harary

conversation on March 28. However, counsel was not informed of Harary's identity (he was

identified only as "Current BG User"), was asked not to use the information without asking

permission first (so as not to affect the User's relationship with Plaintiff), and were provided no

other information about the relevant conversation in which this information was provided to

Defendant Zalta.

Subsequently, Defendants served their requests for production on Plaintiff. Requests 34,

36-39, and 44, sought production of all documents and communications concerning this litigation,

NRZ Entertainment, LLC, Nathan Zalta, Michael Shamah, and TickPricer. Dkt. 137. These

requests should have, and were intended to, result in Plaintiff's production of the relevant text

message conversations between Ellman and Harary. However, in light of the speed at which this

litigation has moved, it was not until Defendants' counsel returned to the pleadings while

responding to Plaintiff's 12(c) motion in October, that Defendants' counsel realized: (1) Plaintiff had not produced a single text message responsive to any of Defendants' requests for production—including the text messages between Ellman and Harary; and (2) if there were documents evidencing Zalta's conversation with Harary wherein a Harary sent Zalta a copy of the Ellman conversation, they needed to be produced. Until October when the matter was investigated further, counsel was unaware of the method by which Harary communicated his conversation with Ellman to Zalta. Ultimately, upon counsel's instruction in October, the Zalta-Harary conversation was located and produced.[5]

Plaintiff's attempt to impugn the searches conducted by Defendants' counsel in both May and October fails. Plaintiff claims "Counsel supposedly used search terms provided by Broker Genius but, they still did not produce the Text Document (containing one search term at least 14 times) and audio messages until nearly 6 months later and only then because they thought they could use a portion of it to support their beleaguered counterclaims." Motion at 14. Plaintiff mischaracterizes the searches done by Defendants'' counsel. Defendants' counsel personally searched Defendants' *email* accounts. The "Text Document" Plaintiff refers to is not composed of or derived from Defendants' emails. Thus, it would not have showed up in their searching.

---

[5] When Defendants' counsel realized that Plaintiff failed to produce a single text message responsive to any of Defendants' requests for production and approached Plaintiff about same, Plaintiff denied knowledge of any relevant text messages. *See* Exhibit O. Plaintiff's counsel's denial was a certification under Rule 26(g) that to the best of their "knowledge, information, and belief *formed after a reasonable inquiry*" their response was truthful and not interposed for any improper purpose. Fed. R. Civ. P. 26(g) (emphasis added.) Yet, despite Plaintiff's counsel's denial, they subsequently supplemented Plaintiff's production with part of the relevant Ellman-Harary conversation. Plaintiff's initial response was a false certification under Rule 26(g); obviously no reasonable inquiry was conducted before they represented to Defendants' counsel that they were unaware of the responsive text messages. The instant motion claiming Defendants and Defendants' counsel should be sanctioned for "late" production of documents within their possession, custody or control and violations of Rule 26(g), is therefore ironic.

## II.      SANCTIONS UNDER RULE 37 ARE NOT WARRANTED.

Even if this Court finds that counsel or Defendants failed to comply with their discovery obligations—which they did not—sanctions are not warranted for two reasons: first, any failure to comply was harmless; and second, any failure was substantially justified. Additionally, the requested sanctions are extreme and not warranted by any harm suffered.

### A.   BROKER GENIUS WAS NOT PREJUDICED BY THE LATE PRODUCTION OF DOCUMENTS OR ALLEGED PERJURIOUS TESTIMONY.

A court cannot impose sanctions under Rule 26(g) or Rule 37(c) where the non-compliant party's failure was substantially justified or harmless. *Clark v. Westchester Cty.*, No. 96 CIV. 8381 (DLC), 1998 WL 709834, at *9 (S.D.N.Y. Oct. 9, 1998). In *Clark*, the Defendant produced portions of a videotape during discovery. Defendant then produced the entire videotape on the day of trial, and used portions of videotape at trial that were not part of original production. The court in *Clark* declined to award sanctions because the Plaintiff failed to demonstrate that he was prejudiced by the defendant's delay in producing the entire videotape before trial. *Id.* at *9-10.

Plaintiff complains that because of the late production of the text conversation between Zalta and Harary it was deprived of an opportunity to depose Zalta, Harary and Bassil on these messages and to use the evidence at the Preliminary Injunction Hearing. (Motion at 14.) However, the Court found that Plaintiff has no protectable trade secrets in AutoPricer because it failed to identify and protect the AutoPricer software components as trade secrets. Dkt. 150 at 37-41.  The Court's ruling was based entirely on what Broker Genius failed to do, and had nothing to do with Defendants' conduct. Having the Harary messages before the hearing would have had no bearing on the Court's finding.

Further, the Court is allowing Plaintiff to depose Shamah and Zalta again on any documents produced subsequent to their first depositions. As it pertains to Bassil and Harary, Plaintiff's

assertion is disingenuous. To date, Plaintiff has never requested a second deposition of Bassil (as it did with Shamah and Zalta) or a first deposition of Harary. Further, Plaintiff has known about Mr. Harary since prior to the evidentiary hearing and could have subpoenaed him for a deposition *duces tecum* at any time. Plaintiff failed to do so; accordingly, its complaint rings hollow. In light of the foregoing, the late production of these materials was harmless.

### B. ANY NON-COMPLIANCE IS SUBSTANTIALLY JUSTIFIED.

By any measure the expedited discovery that the Court ordered placed an extraordinary burden on both Defendants and their counsel. Defendants and their counsel worked diligently to comply with the Court's tight deadlines. Notwithstanding the limited amount of time available, Defendants produced over 14,000 pages of responsive material prior to the hearing, including email messages, text messages, and other documents and communications. Defendants inadvertently skipped a single text chain with embedded voicemail messages—just as Plaintiff also skipped production of Ellman's text conversation with Harary. Given the burdens on both counsel and Defendants to comply in such a limited amount of time, the minor oversight is justified.

### C. THE SANCTIONS REQUESTED BY BROKER GENIUS ARE EXTREME AND NOT WARRANTED BY THE ALLEGED HARM SUFFERED.

Even if this Court finds that sanctions are warranted—and it should not—the relief requested by Broker Genius is extreme. "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation cause[d], and must consider less drastic responses. 'Considerations of fair play may dictate that courts eschew the harshest sanctions ... where failure to comply is due to a mere oversight of counsel amounting to no more than simple negligence.'" *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988) (citing *Cine Forty–Second Street Theatre Corp.,* 602 F.2d 1062,

1068(2d Cir. 1979) (reversing award of sanctions where district court failed to consider less drastic remedies.) "When a discovery sanction denies the defendant the right to a trial on the merits, the district court must either make a finding supported by the record that the more severe sanction is necessary to avoid prejudice to the plaintiffs or to the court's calendar or to prevent a benefit to the defendant, or—if the sanction is based only on deterring future discovery misconduct—the more severe sanction must be supported by a finding of flagrant or egregious misconduct by the defendant." *Bonds v. D.C.*, 93 F.3d 801, 809 (D.C. Cir. 1996).

First, a finding that "TickPricer is a derivative product of AutoPricer" is tantamount to granting summary judgment to Plaintiff on its copyright infringement claim. The owner of a copyright has the exclusive right to create "derivative works" of a copyrighted work. 17 U.S.C. § 106. TickPricer is not a derivative work of AutoPricer. Bassil was the sole programmer of TickPricer. To create a derivative work of AutoPricer, Bassil must have accessed the AutoPricer program itself. He did not. Bassil testified that he never had access to the AutoPricer source code, never logged into the AutoPricer program, and never saw AutoPricer in operation. There is no record evidence to dispute this testimony. Entering a finding that "TickPricer is a derivative product of AutoPricer" would have the effect of entering judgment in Plaintiff's favor on its copyright infringement claim. This would be an extreme remedy that is not warranted.

Similarly, the requested finding that "AutoPricer was used by Defendants in developing the TickPricer Product" is also improper. There is no dispute that Defendants NRZ, Zalta and Shamah were using AutoPricer while TickPricer was being developed. Dkt. 150 at 11. However, the record evidence shows that Defendants Gontham and Bassil never used AutoPricer at any time, and there is no evidence to the contrary.

17

Moreover, there is no nexus between the requested findings and the alleged wrongdoing by Defendants. The complete text messages and voicemail messages between Harari and Defendant Zalta do not establish that Gontham or Bassil ever logged in to AutoPricer, ever used AutoPricer, or ever saw AutoPricer in operation. As discussed above, the only harm that Plaintiff claims it suffered is that it could not present the additional evidence at the preliminary injunction hearing. This harm has no bearing on Plaintiff's claims for copyright infringement or breach of contract.

### D. NEITHER COUNSEL FOR DEFENDANTS NOR DEFENDANTS VIOLATED ANY COURT ORDER.

Every case cited by Plaintiff in support of its sanctions argument under Rule 37 involved violations of Court orders. *See e.g. Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S. Ct. 2778, 2780, 49 L. Ed. 2d 747 (1976) (district court dismissed plaintiff's case for failure to timely answer written interrogatories in violation of court order); *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371 (2d Cir. 1981) (upholding district court's dismissal of plaintiff's suit for plaintiff's failure to comply with court order to produce certain financial records); *Beers v. Gen. Motors Corp.*, 97-CV-482(NPM/DNH), 1999 WL 325378, at *7 (N.D.N.Y. May 17, 1999) (granting motion to dismiss as sanction for counsel's failure to abide by court order and spoliation); *Altschuler v. Samsonite Corp.*, 109 F.R.D. 353, 356 (E.D.N.Y. 1986) (court dismissed case after numerous repeated violations of court order and discovery obligations); *Lyell Theatre Corp. v. Loews Corp.*, 91 F.R.D. 97, 105–06 (W.D.N.Y. 1981), *aff'd,* 682 F.2d 37 (2d Cir. 1982) (sanctioning plaintiff for ignoring countless warnings of the court and Magistrate, failing to abide by many promises made to the defendants, and ignoring and failing to comply with orders of the court and Magistrate); *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 96CIV.9721(PKL)(THK), 2002 WL 54610, at *1 (S.D.N.Y. Jan. 15, 2002) (sanctioning plaintiff

by ordering costs and fees to be paid and striking pleadings for failing to comply with discovery orders). No discovery order was ever violated in the instant case. As such, the facts of each of the foregoing are distinguishable and Plaintiff's reliance on same is misplaced.

## III. SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY ARE NOT WARRANTED.

For all of the reasons stated above, this Court should not sanction Defendants or their attorneys under any rule or pursuant to the Court's inherent authority. Plaintiff's inherent authority argument relies on *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002), a case in which the Second Circuit held that the district court used the wrong legal standard in denying the subject motion for sanctions. *Residential* is distinguishable however, in that the district court found "purposeful sluggishness" by the plaintiff in discovery in light of its resistance to responding to certain questions. There is no evidence of purposeful sluggishness in this case nor evidence of resistance to responding to certain discovery.

Additionally, *Sassower v. Field*, 973 F.2d 75, 80–81 (2d Cir. 1992) is inapposite. There, the Second Circuit stated "a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." In *Sassower*, the plaintiff "pursued th[e] litigation as if it was a holy war and not a court proceeding, managing the[] proceedings in a fashion that vexatiously, wantonly and for oppressive reasons increased the legal fees enormously." *Id.* 78. The record included "several unsupported bias recusal motions," "continual personal attacks on the opposing parties and counsel," "[i]n virtually every instance where a court ruling was not satisfactory to them, plaintiffs routinely made a motion to reargue[,]" "plaintiffs filed two improper interlocutory appeals which were subsequently withdrawn," and "filed a mammoth motion for a new trial and sanctions . . . which seeks to reargue virtually every aspect of the litigation for the third time." *Id.* These types of vexatious and oppressive tactics were

not engaged in by Defendants or Defendants' counsel. In fact, the opposite is true. Plaintiff makes no argument to the contrary.

**CONCLUSION**

For the foregoing reasons, Defendants and Defendants' counsel hereby respectfully request this Court deny the subject motion in its entirety.

Dated: December 11, 2017.

Respectfully submitted,

By: /s/ Jason H. Cooper

THE SLADKUS LAW GROUP
Jeffrey B. Sladkus
Georgia Bar No. 651220
jeff@sladlaw.com
Mark L. Seigel
Georgia Bar No. 634617
mark@sladlaw.com
Jason H. Cooper
Florida Bar No. 98476
Georgia Bar No. 778884
jason@sladlaw.com
1827 Powers Ferry Road
Building 6, Suite 200
Atlanta, GA 30339
Main: (404) 252-0900
Fax: (404) 252-0970

SCHWARTZ SLADKUS REICH
GREENBERG ATLAS LLP
Jared E. Paioff
Stephen H. Orel
270 Madison Avenue
New York, New York 10016
(212) 743-7000 - Telephone
(212) 743-7001 - Facsimile
Email: jpaioff@ssrga.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BROKER GENIUS, INC.,

     Plaintiff,

     v.

NATHAN ZALTA,
MICHAEL SHAMAH,
NRZ ENTERTAINMENT, LLC
JOSEPH BASSIL, and
GONTHAM, LLC.

     Defendants.

Case No. 1:17-cv-02099-SHS

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2017, I electronically filed the foregoing DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO RULES 26 AND 37 with the Clerk of the Court using the CM/ECF system and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ Jason H. Cooper
Counsel for Defendants

21